[Civ. No. 6741. First Appellate District, Division One.—April 23, 1929.]

A. A. HEER, Appellant, v. NATHAN MORAN, Respondent.

Marvin C. Hix for Appellant.

Charles A. Shurtleff for Respondent.

PARKER, J., *pro tem.*—This action was commenced to set aside a settlement between partners and for an accounting. The court below refused to order an accounting and gave judgment for defendant. Plaintiff presents this appeal. Plaintiff and defendant were attorneys at law. In January, 1920, they formed a partnership for the practice of law, which was to continue at the pleasure of the parties. Upon the formation of the partnership it was agreed between the parties that all profits made by them or either of them in the practice of law during the existence of said partnership should belong to said partnership and should be divided between the parties share and share alike. Annually, after the close of each calendar year of said partnership accountings were had and accounts settled between the parties. Pursuant to said agreement of partnership, plaintiff and defendant practiced law as such partners and under the firm name of Moran and Heer until on or about May 24, 1923, at which date notice of dissolution of said partnership was given. This notice was given on the date specified, by defendant to plaintiff and the dissolution was acquiesced in by plaintiff, but the parties continued their business relations until about September 14, 1923, and on or about that date a settlement of their partnership was made. The finding of the trial court is as follows: That on the fourteenth day of September, 1923, plaintiff and defendant discussed at length, and not briefly, the business and assets of the said partnership, which said discussion was for a final and definite settlement and accounting of, and that the same resulted in an accounting and settlement of the affairs of said partnership between plaintiff and defendant. That plaintiff then and there freely and understandingly subscribed and delivered to defendant an instrument in writing, as follows:

"San Francisco, September 15, 1923.

"Received of Nathan Moran the sum of Six Thousand Dollars ($6000.00) in full satisfaction of all claims and demands in respect of the partnership heretofore existing be-

tween us, and in further consideration of which I hereby assign and transfer to the said Nathan Moran all my right, title and interest in and to the property, assets and accounts of the said partnership which is hereby dissolved and terminated.

"(Signed)   A. A. HEER."

- The trial court found further: "Defendant did not at any time make to plaintiff any false or untruthful misrepresentations. Plaintiff did not rely upon the representations made by the defendant, nor act wholly or at all upon belief or reliance therein, and did not by reason thereof accept from defendant the said sum of $6,000 as payment in full of plaintiff's share of the then accrued and undivided profits, business, good will and assets or any of them, of the said partnership. Further it is found: Said statements and representations were not, nor were any statements or representations made by defendant false or untrue, nor were the same or any of them then or at any time known to defendant to be untrue nor were untrue. Said statements and representations were not, nor were any of them made by defendant with the intent to mislead or defraud the plaintiff nor to induce him to accept the said sum of $6,000 in full of his share of the assets and profits of said business. At the time said representations were made, plaintiff had ample means of ascertaining the truth or falsity of the same equally as good and as available as those of the defendant, and plaintiff did, between May 24, 1923, and September 14, 1923, frequently, fully and carefully investigate the business, affairs and accounts of the said partnership. And in the settlement of the affairs of said partnership the plaintiff relied upon his own investigations, knowledge and means of knowledge." ▮ The findings referred to find sufficient support in the evidence before the court. It may be true that certain evidence offered by plaintiff would have supported different findings, but that is a matter that gives us no concern. In *Hotaling* v. *Hotaling*, 187 Cal. 699 [203 Pac. 747], we find this apt language: "The trial judge was called upon to delicately adjust the balance so as to determine upon which side the preponderance might lie, while upon this appeal our only duty is to ascertain if there was any substantial showing in behalf of the court's finding to give rational support to the conclusion reached. Further in the same case it is said:

"We have but touched upon a review of the voluminous evidence, because of the fact that it is too manifest that any nice distinctions in these matters are foreclosed by the findings of the trial court" and again: "We find in this record on appeal many reasons for putting a more favorable construction upon the defendant's side of the controversy than were indulged in by the trial court, but upon a review of the whole case, it is clear that the findings which support the judgment have substantial support in the evidence." In *Aronson* v. *Pearson*, 199 Cal., at page 303 [249 Pac. 195], it is said: "But where the evidence is sufficient to support conflicting inferences, the finding of the trial court either way thereon is conclusive on appeal. The evidence must be viewed in the light most favorable to the support of the findings and judgment." Without further citation of authority it may be said that there is no rule of appellate procedure which is more generally recognized and followed than the rule announced in the cases cited. The record before us consists of the testimony of the parties and certain documentary evidence. Excerpts from the testimony or inferences that may be drawn from the documents offered may lend color to the argument of appellant. But if we should detail here all of the evidence and analyze each alleged discrepancy, we would still have the labor of setting at naught the rule announced, before we could disturb the finding. It might, however, be noted that both of the parties to this action are practicing attorneys of great experience. They had several months within which to settle their affairs and all of the business affairs of the partnership were matters of public record. Each of them was qualified to protect himself in any transaction and each knew the effect of the written agreement of settlement. Neither required independent advice nor was either reliant upon the representations of the other. With this condition existing it would not require evidence to the degree of demonstration to support the court's finding. We conclude that at the date of the written settlement everything was fairly and fully adjusted. There remains, however, another contention of the appellant. Prior to the formation of the partnership the defendant Moran had been associated with other counsel in representing the executors of the Hearst Estate. Though associated, he was not the attorney for the executors, but

merely employed by the attorneys of record. Before the formation of the partnership between the parties hereto, the attorneys for the executors of the Hearst Estate, with the consent of the said executors, arranged with defendant Moran that the latter should conduct all legal proceedings thereafter required in the course of the administration of the said estate and for such service should receive half of the attorney's fees allowed in the probate court. Under this arrangement the original attorneys for the executors still remained the attorneys of record in the probate proceeding. The defendant Moran did account for all fees received through the said Hearst Estate employment up to the date of the dissolution of the partnership and likewise for all fees received thereafter excepting as will be noted as we proceed. After the Hearst Estate was, to all intents, settled and ordered distributed, and at a time subsequent to the dissolution of the partnership, there arose some questions regarding the claim of the federal government for additional income taxes accrued against Mrs. Hearst during her lifetime. This matter of unpaid federal taxes had never been handled by defendant Moran or by the attorneys with whom he had been associated in estate matters. The entire matter of federal income taxes, both before and after the death of Mrs. Hearst, had been in the hands of other counsel and had remained separate from and not connected with the administration of the estate. The trial court found upon sufficient evidence that defendant Moran at the time of the settlement of the partnership affairs had no reason to believe or know and he did not believe or know that this business was to be subsequently entrusted to him. However, that was what did happen. At a date subsequent to the dissolution of the partnership and the settlement of the affairs thereof, the executors of the Hearst Estate retained Moran to represent them in these income tax matters and from this service he has received large sums of money from the date of his retainer down to the commencement of this action, namely in June, 1925. Plaintiff argues that such receipts were partnership assets and his right to participate therein. The trial court found that his employment was a new one and unforeseen and unanticipated and wholly individual to the defendant. We are not inclined to scrutinize the finding, but mention it merely as illustrating the situation at the

time of the settlement. Any amounts that might have been received after the date of the settlement would be a matter of accounting. Plaintiff would not be entitled to enter into these questions without first establishing his right to an accounting. It is conceded that if the settlement agreement is binding and the right of the parties determined and settled thereby then as long as the said settlement agreement stands no accounting will be ordered. ■ The burden of proof is on plaintiff to prove his right to an accounting and if he fail to sustain it, judgment must be for defendant. (1 Cor. Jur., p. 642.) If we should proceed with the contention of appellant here and review all of the authorities cited on the question of what business might or might not have had origin during the term of partnership and if we should conclude that plaintiff, on an account taken, would be entitled to a share in the business as claimed, we would still have before us the fact that plaintiff has precluded himself by the terms of an agreement found to be fair and binding.

Without evading the issue attempted there was much evidence to support a conclusion that the relationship between defendant Moran and the Hearst Estate was merely by grace of the attorneys of record therein, who had been his former employer. It was evident that Moran was not entrusted with the sole management of the affairs of the estate, but the business was brought to him from time to time and finally the bulk of the probate matter was turned over to him. At no time could it be distinctly classed as his business or the business of the partnership of Moran and Heer. The case as a whole discloses a situation where two lawyers, without great practice, were employed by a large firm of attorneys. Moran, the defendant, was apparently closer in the confidence of the employers. Heer, the plaintiff, was receiving a small salary more like that paid to a clerk. The employing firm, in a way withdraws from practice, and the two former employees establish an independent firm with no fixed income or attractive prospects. Moran, through his familiarity with the business of the Hearst Estate, is given, from time to time, much remunerative work and shares the proceeds with Heer to an extent greatly in excess of the former income of the latter. Then when the

firm of Moran & Heer is dissolved it happens that the Hearst executors, owing to the death of one of their attorneys and the removal of the other from the state, decide that Moran, on account of his familiarity with the estate matters, would be a logical choice as their advisor in certain new matters that have arisen. On the whole we are convinced that no injustice results to plaintiff in holding him bound by his settlement and the trial court doubtless concluded that he had secured throughout fair and honorable treatment. The final finding of the trial court is as follows:

"No accounting between plaintiff and defendant of the business, profits and assets of said partnership of Moran and Heer, from its beginning or for any time, is necessary to determine the respective rights of plaintiff and defendant. That notice of dissolution of said partnership was given and accepted on or about May 24, 1923, and on September 14, 1923, a full and complete settlement and accounting was had between the parties, at which time plaintiff was possessed of full knowledge of the business of said firm and had access to its records and accounts and that plaintiff thereupon freely and voluntarily entered into and made the said settlement and gave to defendant in writing a receipt in full of plaintiff's interest in said partnership and a release of all claims and liability." This finding is sufficiently supported by the evidence. ■ Much is said in the briefs on the question of an effectual rescission. Under the findings plaintiff established no right to rescind nor did he prove the existence of any ground of rescission. Therefore, whether he did or did not give sufficient notice of rescission or whether or not he made proper offer of restoration became quite immaterial. Some other minor assignments of error are urged by appellant. These have been considered, but in view of what has been stated the judgment could in nowise be affected thereby.

Judgment affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 23, 1929, and a petition

by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 20, 1929.

All the Justices concurred.